# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.H.,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>BILL DICKINSON,<br><br>　　　　　Respondent. | Case No. 1:24-cv-01166-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner E.H. is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND[1]

On June 8, 2022, the Kern County District Attorney filed an amended juvenile wardship petition, pursuant to Welfare & Institutions Code section 602, alleging that minor had committed sexual battery (Pen. Code, § 243.4, subd. (e)(1);[2] count 1), and annoying or molesting a child (§ 647.6, subd. (a)(1); count 2).

On July 8, 2022, a contested jurisdictional hearing was held. On July 8, 2022, the juvenile court found both allegations true.

---

[1] The Court relies on the California Court of Appeal's April 20, 2023 opinion for this summary of the relevant facts and procedural history. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

[2] All statutory references are to the Penal Code unless otherwise noted.

> On August 10, 2022, minor was adjudged a ward of the court and
> granted probation with various terms and conditions, including that
> minor serve five days in custody at a youth detention center.

(LD[3] 9 at 2 (footnote in original).) On April 20, 2023, the California Court of Appeal, Fifth

Appellate District, affirmed the disposition order. (LD 9 at 11; ECF No. 10 at 2.) On June 28,

2023, the California Supreme Court denied the petition for review. (LD 11.)

On September 20, 2024, Petitioner filed the instant federal petition for writ of habeas

corpus in the Sacramento Division of the United States District Court for the Eastern District of

California. (ECF No. 1.) On October 2, 2024, the petition was transferred to the Fresno Division.

(ECF No. 4.) In the petition, Petitioner asserts that there was insufficient evidence to find the two

juvenile wardship allegations true. (ECF No. 1 at 4.[4]) On October 29, 2024, Respondent filed an

answer. (ECF No. 10.) To date, no traverse has been filed, and the time for doing so has passed.

**II.**

**STATEMENT OF FACTS**

On October 24, 2021, A.R. (15 years old at the time), J.H. (14 years old at the
time), and minor (17 years old at the time), attended their school's homecoming
dance. A.R. and J.H. were friends. Minor is J.H.'s older brother.

A.R.'s mother, Grace R., drove the three teenagers to the dance. A.R.'s younger
sister, B.R. (12 years old at the time), accompanied them for the drive. B.R. had
known minor as an acquaintance for the prior month, as she began attending the
same school as A.R., J.H., and minor at the beginning of the school year, and her
older sister, A.R., was friends with minor's younger sister, J.H.

Later that evening, A.R. and B.R.'s father, Alexander R., picked the teenagers up
from the dance in his large SUV. B.R. again accompanied them for the drive, as
did her younger sister L.R. (11 years old at the time), and their small lap dog.
Alexander sat in the driver's seat, A.R. sat in the front passenger seat, J.H. sat on
the left side of the middle row bench seat, minor sat in the middle seat of the
middle row bench seat, B.R. sat on the right side of the middle row bench seat,
and L.R. sat behind B.R. in the third row by herself with the dog. During the
approximately 40- to 45-minute drive home, it was "dim" in the car, but not
"pitch black."

Alexander brought pizza when he picked the teenagers up, which everyone passed
around and ate in the car. After eating the pizza, B.R. took the dog from her sister,
L.R., and put it on her lap so that she could show it to minor and his sister, J.H.
Minor pet the dog on the head "every now and then" while it was in B.R.'s lap as

---

[3] "LD" refers to the documents lodged by Respondent on October 29, 2024. (ECF No. 9.)
[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

he and B.R. talked. Minor told B.R. he was "in a bad spot mentally." She told him she "was there if he ever needed anything."[5]

As they drove, minor was turned towards B.R., petting the dog on her lap with his left hand. B.R. then felt minor touch her left breast with his left hand. B.R. showed the trial court where on her body he touched her, described by the prosecutor as the "left chest area above the top of the breast." He started "groping" her with the same hand, which B.R. demonstrated to the court. The prosecutor described her demonstration, stating, "[T]he witness just had her hand out and closed her fingers in kind of a grabbing movement."

B.R. testified that at first, she thought that minor misplaced his hand when trying to pet the dog, but stated that he "just kept … grabbing [her]." B.R. asked him whether he wanted to pet the dog and, even though he said he did not want to anymore, B.R. pushed the dog "in front of" the area where minor was groping her so that he could no longer touch her there.

Minor pet the dog but then touched B.R.'s breast again, this time by reaching his hand under the dog's neck and then rubbing, rather than grabbing, her breast. B.R. then pushed the dog into minor's lap and he stopped touching her breast. In total, minor touched B.R.'s breast for about five minutes.

L.R. and Alexander both testified that they saw B.R. push the dog to minor. Alexander also stated that he heard B.R. say to minor several times, "[H]old my dog." L.R. testified that B.R. then turned to L.R. and had a "funny" look on her face, but B.R. did not say anything to her.

The day after the car ride, B.R. stated to police that when minor could no longer touch her left breast because of where she moved the dog, he reached his right arm over the back of her head and top of her seat and moved his right arm in such a way that she thought he was going to touch her right breast. To prevent him from doing so, B.R. moved her own arm so that minor could not reach her breast. L.R. saw minor put his right arm around the back of B.R.'s seat. L.R. could hear B.R. and minor laughing. At the jurisdictional hearing, B.R. stated she could not remember what minor did with his right hand and arm, which was closest to her.

While minor was touching her breast, B.R. was "[s]cared" and "didn't really know why it was happening." As a result, she did not tell anyone right away. At first, she thought minor's hand was misplaced, but the area where he was touching was covered by her thick wool jacket that did not feel "fuzzy like [her] dog."

Thirty seconds after minor and his sister, J.H., were dropped off at their home, B.R. felt like she "was going to throw up." B.R. asked her father, Alexander, in a panicked way, to stop their car. Alexander saw B.R. become "increasingly frantic." He immediately pulled over and B.R. got out of the car and cried. Alexander got out of the car and saw B.R. "trembling and shaking" and "[h]er voice was kind of broken and panicky." She was "struggling to get her words out." B.R. told him that minor had grabbed her breast and showed him where minor had touched her. According to L.R., once back inside the car, B.R. told her sisters, A.R. and L.R., that minor had touched her.

---

[5] L.R. and Alexander testified that they could both hear minor and B.R. talking on the drive, but neither could make out the conversation.

Alexander immediately drove back to minor's home to confront him. Grace called the police the following morning.

***Defense Case***

### Minor's Testimony

Minor testified that he sat between his sister, J.H., and B.R. on the middle row bench seat on the drive home from the dance. He stated it was "light enough" for him to see inside the car. He stated he had no relationship with B.R. and that she was a "stranger" to him. He testified that he pet the dog in B.R.'s lap almost the entire car ride home and that the dog was resting against B.R.'s chest, at her "breast level." He used his left hand to pet the dog and only pet the dog's head. He testified that he moved his right arm to the back of B.R.'s seat because there was no room for his right arm beside him, but that his right arm never fell down onto or touched B.R. He denied ever inappropriately touching B.R. because she is "fat and ugly."

When police questioned minor, he stated to them that "it may have been an accident if [his hand] did touch" B.R, but that he "did not grab her."

Minor testified that he understood that touching a female's breast area without consent was inappropriate.

### J.H.'s Testimony

Minor sister, J.H., testified that she was falling in and out of sleep on the drive home, but that when she was awake, she did not see J.H. touch B.R. inappropriately. She stated that minor was facing towards B.R. when B.R. asked minor if he wanted to pet the dog and that minor pet the dog's head for only a few seconds.

(LD 9 at 2–5 (footnote in original).)

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged findings arise out of the juvenile court in Kern County, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

1   enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th

2   Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is

3   therefore governed by its provisions.

4          Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred

5   unless a petitioner can show that the state court's adjudication of his claim:

6              (1) resulted in a decision that was contrary to, or involved an
               unreasonable application of, clearly established Federal law, as
7              determined by the Supreme Court of the United States; or

8              (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
9              State court proceeding.

10  28 U.S.C. § 2254(d); Davis v. Ayala, 576 U.S. 257, 268–69 (2015); Harrington v. Richter, 562

11  U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been

12  "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala,

13  576 U.S. at 269. However, if the state court did not reach the merits of the claim, the claim is

14  reviewed de novo. Cone v. Bell, 556 U.S. 449, 472 (2009).

15         In ascertaining what is "clearly established Federal law," this Court must look to the

16  "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the

17  relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court

18  decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that

19  'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent

20  decisions"; otherwise, there is no clearly established Federal law for purposes of review under

21  AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742,

22  754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125,

23  123 (2008)).

24         If the Court determines there is clearly established Federal law governing the issue, the

25  Court then must consider whether the state court's decision was "contrary to, or involved an

26  unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A

27  state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at

28  a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state

1  court decides a case differently than [the Supreme Court] has on a set of materially

2  indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an

3  unreasonable application of[] clearly established Federal law" if "there is no possibility

4  fairminded jurists could disagree that the state court's decision conflicts with [the Supreme

5  Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state

6  court's ruling on the claim being presented in federal court was so lacking in justification that

7  there was an error well understood and comprehended in existing law beyond any possibility for

8  fairminded disagreement." Id. at 103.

9      If the Court determines that the state court decision was "contrary to, or involved an

10  unreasonable application of, clearly established Federal law," and the error is not structural,

11  habeas relief is nonetheless unavailable unless it is established that the error "had substantial and

12  injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)

13  (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776

14  (1946)).

15      AEDPA requires considerable deference to the state courts. Generally, federal courts

16  "look through" unexplained decisions and review "the last related state-court decision that does

17  provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision

18  adopted the same reasoning." Wilson v. Sellers, 584 U.S. 122, 125 (2018). This presumption

19  may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on

20  different grounds than the lower state court's decision, such as alternative grounds for affirmance

21  that were briefed or argued to the state supreme court or obvious in the record it reviewed." Id.

22      "When a federal claim has been presented to a state court[,] the state court has denied

23  relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that

24  the state court adjudicated the claim on the merits in the absence of any indication or state-law

25  procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a

26  decision on the merits and there is no reasoned lower-court opinion, a federal court

27  independently reviews the record to determine whether habeas corpus relief is available under

28  § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the

1  record is not *de novo* review of the constitutional issue, but rather, the only method by which we

2  can determine whether a silent state court decision is objectively unreasonable." Himes v.

3  Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court

4  record and "must determine what arguments or theories . . . could have supported, the state

5  court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

6  those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme]

7  Court." Richter, 562 U.S. at 102.

8                                             **IV.**

9                                       **DISCUSSION**

10         Petitioner asserts that there was insufficient evidence to find the two juvenile wardship

11  allegations (sexual battery and annoying or molesting a child) true. (ECF No. 1 at 4.) Respondent

12  argues that there was sufficient evidence to support the factual findings against Petitioner

13  because the victim's testimony was competent, substantial evidence and the state court's

14  rejection of Petitioner's claims was not objectively unreasonable. (ECF No. 10 at 1, 6.) These

15  claims were raised on direct appeal to the California Court of Appeal, Fifth Appellate District,

16  which denied the claims in a reasoned decision. The claims were also raised in the petition for

17  review, which the California Supreme Court summarily denied. As federal courts "look through"

18  summary denials and review "the last related state-court decision that does provide a relevant

19  rationale," Wilson, 584 U.S. at 125, this Court will examine the decision of the California Court

20  of Appeal.

21         In denying Petitioner's sufficiency of the evidence claims, the California Court of Appeal

22  stated:

23         Minor contends the juvenile court abused its discretion because there is not
           substantial evidence on the record to support the court's findings that minor
24         committed the offenses of sexual battery and annoying or molesting a child. We
           disagree.

25         ***A.    Background***

26
           The juvenile court found true both allegations against minor: sexual battery (§
27         243.4, subd. (e)(1); count 1), and annoying or molesting a child (§ 647.6, subd.
           (a)(1); count 2). It explained at the jurisdictional hearing that it found B.R. to be
28         credible, while minor was not.

                                                   7

***B.    Law***

We review the minor's contentions using the same standard of review that applies in adult criminal cases. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)

"Specifically, we determine whether substantial evidence—'evidence that is reasonable, credible, and of solid value'—supports the juvenile court's findings." (*In re I.A.* (2020) 48 Cal.App.5th 767, 778 (*I.A.*).) Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. (*People v. Clark* (2011) 52 Cal.4th 856, 943.)

"We view the evidence 'in the light most favorable to the prosecution and presume in support of the [findings] the existence of every fact the [court] could reasonably have deduced from the evidence.' [Citation.] We 'accept [all] logical inferences that the [court] might have drawn from the … evidence' [citation], but reject inferences ' "based on suspicion alone or on imagination, speculation, supposition, surmise, conjecture, or guess work." ' [Citations.]" (*I.A.*, *supra*, 48 Cal.App.5th at p. 778.)

When the circumstances reasonably support the court's findings, the reviewing court's opinion that the circumstances might also reasonably point to a contrary finding does not warrant reversal. (*In re George T.* (2004) 33 Cal.4th 620, 631.) "[O]n appeal all conflicts in the evidence and attendant reasonable inferences are resolved in favor of the judgment." (*In re Juan G.* (2003) 112 Cal.App.4th 1, 5, fn. omitted.) "We will reverse only if ' "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the [court's findings].' " (*I.A.*, *supra*, 48 Cal.App.5th at p. 778.)

The testimony of a single witness, if believed by the factfinder, is sufficient to support a conviction, unless that testimony is physically impossible or inherently improbable. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

***C.    Analysis***

Here, there is sufficient evidence on the record to support the juvenile court's findings that minor committed both the offense of sexual battery and annoying and molesting a child.

### 1.    Sexual Battery (§ 243.4, subd. (e)(1); count 1)

Here, there is sufficient evidence to support the court's finding that minor committed sexual battery by touching B.R.'s breast during the car ride home from the dance.

"Any person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse," commits misdemeanor sexual battery. (§ 243.4, subd. (e)(1).) One " 'touches' " under the statute by causing "physical contact with another person, whether accomplished directly, through the clothing of the person committing the offense, or through the clothing of the victim." (§ 243.4, subd. (e)(2).) An "intimate part" refers to "the sexual organ, anus, groin, or buttocks of any person, and the breast of a female." (§ 243.4, subd. (g)(1).) In contrast to simple or felony battery, "[s]exual battery is a specific intent crime." (*People v. Chavez* (2000) 84 Cal.App.4th 25, 29.) One's purpose "can be

inferred from the act itself together with its surrounding circumstances." (*In re Shannon T.* (2006) 144 Cal.App.4th 618, 622.)

B.R. testified that minor touched her breast over her jacket while they were in the car. Her breast is an intimate part of her body. (§ 243.4, subd. (g)(1).) She testified that she did not want him to do so and that she had attempted to stop him by telling him to pet her dog and pushing the dog into his lap.

The juvenile court stated that it found B.R.'s testimony on where and how minor touched her to be credible. It also stated that it found her testimony that she did not want minor to touch her breast and had tried to stop him by pushing her dog onto his lap to be credible. The court also stated that it did not believe minor to be credible based on the inconsistencies in his testimony. As the factfinder, the juvenile court was entitled to find B.R.'s testimony to be credible, as nothing B.R. alleged was either physically impossible or inherently improbable.

Last, the evidence supports the inference that minor touched B.R.'s breast with the specific purpose of sexual arousal or sexual gratification. He testified that B.R. was only an acquaintance and that he knew she was only 12 years old at the time. He also stated that he knew the difference between "appropriate" and "inappropriate" touching and that he knew it was inappropriate to touch females' breasts against their will.

Minor contends that he believed he was touching the dog, rather than B.R.'s breast. However, minor testified that, while it was dark outside, it was still light enough to see inside the car. Further, B.R. testified that minor touched her breast over her wool jacket, which felt different than the dog's fur, and that he reached under the dog's neck to continue touching her breast and only finally stopped touching her breast once she pushed the dog into his lap.

Based on this evidence, the juvenile court was entitled to make the reasonable inference that minor's touching was accordingly for the specific purpose of sexual arousal or sexual gratification and was not accidental.

Minor last argues that B.R. consented to him touching her breast, and accordingly, he could not commit sexual battery because of her consent. However, there is no evidence on the record that she consented. She testified, as outlined above, that she tried to push the dog in the way of his hand to prevent him from reaching her breast, and when he continued to touch her breast by reaching his hand under the dog's neck, she finally pushed the dog into his lap so he could not touch her any longer. Further, minor testified at trial that he did not touch her breast. He also testified that, if he did touch her breast, it was only by accident while he was trying to pet the dog. Accordingly, there is no evidence to support minor's contention that B.R. consented to him touching her breast.

Accordingly, as we must resolve all conflicts in the evidence and the juvenile court's attendant reasonable inferences in favor of the judgment, we find there is sufficient evidence on the record supporting the court's finding that minor committed sexual battery (§ 243.4, subd. (e)(1); count 1).

**2.    Annoying or Molesting a Child (§ 647.6, subd. (a)(1); count 2)**

Here, there is also sufficient evidence on the record to support the juvenile court's finding that minor committed the offense of annoying or molesting a child.

To convict a defendant of violating section 647.6, the prosecution must prove: (1) the defendant engaged in conduct directed at a child; (2) a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct; (3) the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child; and (4) the child was under the age of 18 years old at the time of the conduct. (§ 647.6, subd. (a)(1).) It is not necessary that the child actually be irritated or disturbed or that the child actually be touched. (*People v. Lopez* (1998) 19 Cal.4th 282, 289.) In determining "whether the defendant's conduct would unhesitatingly irritate or disturb a normal person, we employ an objective test not dependent on whether the child was in fact irritated or disturbed." (*Id.* at p. 290.)

Here, the evidence is undisputed that B.R. was a child under the age of 18: she was only 12 years old at the time of the incident. Also, as discussed above, there is sufficient evidence of minor's conduct directed at B.R. of touching her breast against her will. Further, there is sufficient evidence supporting the court's reasonable inference that minor's conduct was motivated by an unnatural or abnormal sexual interest in the child, as he testified that he knew it was wrong to touch females inappropriately without permission, and that he did not have a relationship with B.R.

Last, the evidence supports the court's finding that a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by minor's conduct. The age difference between a 12 year old and 17 year old is great and being touched inappropriately and without consent by someone with whom a person has no prior relationship would be offensive, irritating, disturbing or injurious to a reasonable person.

Minor contends that any sexual interest he had in B.R. could not be deemed " 'unnatural' " or " 'abnormal' " because he and B.R. were relatively close in age. Minor contends that B.R. was "already" 12 years old and attended the same school as minor and their respective sisters, A.R. and J.H, arguing that they were in the same age group and thus, their age difference did not make his conduct objectively offensive or any sexual interest he had in B.R. " 'abnormal.' "

However, the juvenile court stated that it found B.R. and minor's age difference and lack of a prior relationship to be significant. B.R. and minor attended a "Junior-Senior" high school, which B.R. had only just begun attending one month prior as a 12 year old, while minor was 17 years old and in the 12th grade, preparing to graduate. B.R. did not attend the dance with the teenagers A.R., J.H., and minor, and B.R. testified that she only knew minor as an acquaintance because their sisters, A.R. and J.H., were friends, not because she and minor were friends. Further, as discussed above, minor testified that he knew touching a female's breast without consent was "inappropriate." Accordingly, sufficient evidence supports the court's finding that minor's conduct was motivated by an abnormal or unnatural sexual interest in B.R.

Reviewing the whole record in the light most favorable to the judgment below, it does not appear that " ' " 'upon no hypothesis whatever is there sufficient substantial evidence to support' " ' " the court's findings, although the circumstances might also reasonably point to a contrary finding. (*I.A.*, *supra*, 48 Cal.App.5th at p. 778.)

///

10

1          Accordingly, as we must resolve all conflicts in the evidence and the juvenile
2          court's attendant reasonable inferences in favor of the judgment, we affirm.

3   (LD 9 at 6–11.)

4          The Supreme Court has held that when reviewing a sufficiency of the evidence claim, a

5   court must determine whether, viewing the evidence and the inferences to be drawn from it in the

6   light most favorable to the prosecution, any rational trier of fact could find the essential elements

7   of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A

8   reviewing court "faced with a record of historical facts that supports conflicting inferences must

9   presume—even if it does not affirmatively appear in the record—that the trier of fact resolved

10  any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. State

11  law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of

12  evidence that the Due Process Clause requires to prove the offense is purely a matter of federal

13  law." Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quoting Jackson, 443 U.S. at 319).

14         Jackson "makes clear that it is the responsibility of the [trier of fact]—not the [reviewing]

15  court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing

16  court may set aside the . . . verdict on the ground of insufficient evidence only if no rational trier

17  of fact could have agreed . . . ." Cavazos v. Smith, 565 U.S. 1, 2 (2011). No "particular form of

18  evidence is required to support the Court of Appeal's reasoning or the . . . verdict." Lucero v.

19  Holland, 902 F.3d 979, 992 (9th Cir. 2018). "Circumstantial evidence and inferences drawn from

20  it may be sufficient to sustain a conviction." Ngo v. Giurbino, 651 F.3d 1112, 1114 (9th Cir.

21  2011) (quoting Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995)). A federal court's "job

22  under AEDPA is to avoid a 'type of fine-grained factual parsing' that does not accord deference

23  to either [triers of fact] or state courts, and instead to survey any possible fact in the record that

24  could support, directly or circumstantially, the . . . conviction." Lucero, 902 F.3d at 992 (citing

25  Coleman, 566 U.S. at 655). "[A] federal court may not overturn a state court decision rejecting a

26  sufficiency of the evidence challenge simply because the federal court disagrees with the state

27  court. The federal court instead may do so only if the state court decision was 'objectively

28  unreasonable.'" Cavazos, 565 U.S. at 2. "Because rational people can sometimes disagree, the

11

1    inevitable consequence of this settled law is that judges will sometimes encounter convictions

2    that they believe to be mistaken, but that they must nonetheless uphold." Id.

3         Petitioner asserts that there was insufficient evidence to find that he committed sexual

4    battery. Petitioner contends that in the process of petting the dog, he accidentally touched the

5    victim's breast. Petitioner also argues that "the victim never objected to the touching or in any

6    way communicated to petitioner that she objected to the touching." (ECF No. 1 at 4.) B.R.

7    testified that Petitioner groped, grabbed, and touched her breast area while Petitioner testified

8    that he never touched B.R. inappropriately or touched her breast or any other part of B.R.'s body.

9    In light of the disposition order, the juvenile court necessarily found B.R.'s testimony to be

10   credible and Petitioner's testimony to be not credible. "[U]nder Jackson, the assessment of

11   credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298,

12   330 (1995). See also Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004) ("A [factfinder]'s

13   credibility determinations are therefore entitled to near-total deference under Jackson.").

14        Petitioner argues that there was no evidence presented that any touching amounted to an

15   unnatural or abnormal sexual interest in a child. Petitioner contends that the "victim was twelve

16   years old and the petition[er] was seventeen years told and they attended the same school and

17   traveled in the same social circles as peers." (ECF No. 1 at 4.) However, "B.R. and [Petitioner]

18   attended a 'Junior-Senior' high school, which B.R. had only just begun attending one month

19   prior as a 12 year old, while [Petitioner] was 17 years old and in the 12th grade, preparing to

20   graduate." (LD 9 at 10.) Additionally, "B.R. testified that she only knew [Petitioner] as an

21   acquaintance because their sisters, A.R. and J.H., were friends, not because she and [Petitioner]

22   were friends." (Id.) Petitioner also testified that he "didn't really [have] any interaction with

23   [B.R.] because I had nothing to do with her." (2 RT⁶ 216.) The "juvenile court stated that it

24   found B.R. and minor's age difference and lack of a prior relationship to be significant," and the

25   appellate court noted that Petitioner "testified that he knew touching a female's breast without

26   consent was 'inappropriate.'" (LD 9 at 10.)

27   ─────────────────

28   [6] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on October 29, 2024. (ECF No. 9.)

1    "Although the evidence presented at trial could yield an alternative inference, we 'must

2    respect the exclusive province of the [factfinder] to determine the credibility of witnesses,

3    resolve evidentiary conflicts, and draw reasonable inferences from proven facts.'" Long v.

4    Johnson, 736 F.3d 891, 896 (9th Cir. 2013) (quoting United States v. Archdale, 229 F.3d 861,

5    867 (9th Cir. 2000)). "The [factfinder] in this case was convinced, and the only question under

6    Jackson is whether that finding was so insupportable as to fall below the threshold of bare

7    rationality." Coleman, 566 U.S. at 656. Moreover, "after AEDPA, we apply the standards of

8    Jackson with an additional layer of deference to state court findings." Ngo, 651 F.3d at 1115

9    (internal quotation marks and citation omitted). Thus, under this "double dose of deference that

10   can rarely be surmounted," Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011), the state

11   court's denial of Petitioner's sufficiency of the evidence claims was not contrary to, or an

12   unreasonable application of, clearly established federal law, nor was it based on an unreasonable

13   determination of fact. The decision was not "so lacking in justification that there was an error

14   well understood and comprehended in existing law beyond any possibility for fairminded

15   disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief

16   on his sufficiency of the evidence claims.

**V.**

**RECOMMENDATION**

19   Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for

20   writ of habeas corpus be DENIED.

21   This Findings and Recommendation is submitted to the assigned United States District

22   Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

23   Rules of Practice for the United States District Court, Eastern District of California. Within

24   **THIRTY (30) days** after service of the Findings and Recommendation, any party may file

25   written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and

26   serve a copy on all parties. Such a document should be captioned "Objections to Magistrate

27   Judge's Findings and Recommendation." Replies to the objections shall be served and filed

28   within fourteen (14) days after service of the objections. The assigned United States District

Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   **January 16, 2025**          /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE